IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALI A. MOHAMED,<br><br>Plaintiff,<br>v.<br><br>RUTH A. DOROCHOFF, District Director, U.S. Citizenship and Immigration Services; ERIC H. HOLDER, JR., Attorney General; JANET NAPOLITANO, Secretary, Department of Homeland Security; and ROBERT MUELLER, Director, Federal Bureau of Investigation,<br><br>Defendants. | ) | No. 11 C 1610<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ali A. Mohamed has filed a complaint for declaratory and mandatory relief against Ruth A. Dorochoff , a District Director at the United States Citizenship and Immigration Services ("USCIS"); Attorney General Eric H. Holder, Jr.; Department of Homeland Security Secretary Janet Napolitano; and Federal Bureau of Investigation ("FBI") Director Robert Mueller. Plaintiff's complaint arises from an allegedly unreasonable delay in the adjudication of his naturalization application. Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, defendants' motion is denied as to defendants Dorochoff, Holder, and Napolitano, and granted with respect to defendant Mueller.

## FACTUAL BACKGROUND[1]

Plaintiff, a native of Somalia and resident of Chicago, was granted permanent residency in the United States on December 8, 2004. On December 21, 2009, plaintiff filed a Form N-400 Application for Naturalization ("application") with the Chicago USCIS District Office. On January 25, 2010, plaintiff provided biometrics at a USCIS application support center. Since that date, USCIS has not issued plaintiff an interview notice, requested additional evidence or information from him, or otherwise contacted plaintiff regarding his naturalization application. By congressional mandate, USCIS must receive confirmation from the FBI that a full criminal background check has been completed before USCIS can use any funds to adjudicate a naturalization application. Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997). A federal regulation promulgating that mandate provides that USCIS will interview naturalization applicants only after this full background check has been completed. 8 C.F.R. § 335.2(b) (2006). USCIS interprets a 'full criminal background check' as including: (1) an FBI name check, run against FBI investigative databases including administrative, applicant, criminal, personnel and other files; (2) an FBI fingerprint check, which provides information relating to criminal history in the United States; and (3) a check against the Interagency Border Inspection System, which contains records and information from over 20 federal law enforcement and intelligence agencies.[2]

---

[1]Unless otherwise specified, the following facts come from plaintiff's complaint, and for purposes of evaluating defendants' motion to dismiss, the court accepts them as true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted).

[2]These facts were supplied by an affidavit from the USCIS defendant attached to defendants' motion to dismiss, and are presumed true for the purposes of determining

(continued...)

Once the FBI completes a name check, it forwards the results to USCIS, which determines what additional information, if any, is pertinent to the application. USCIS then performs any outstanding background and security checks it deems necessary to determine the eligibility of the applicant. USCIS does not schedule an interview with the applicant until it has completed its own background checks. In the instant case, the FBI completed plaintiff's name check on February 2, 2010. USCIS has neither completed its additional background checks on plaintiff nor scheduled his interview.[3]

On May 17, 2010, and July 19, 2010, plaintiff attended InfoPass[4] appointments to inquire into the status of his case. At both of these appointments, plaintiff was notified that his case was pending and that additional review was necessary. On February 15, 2011, through congressional inquiry, plaintiff was informed that his case was pending review by a supervisory officer.

On March 8, 2011, plaintiff filed the instant action seeking relief under 28 U.S.C. § 1361, the mandamus statute; 28 U.S.C. § 2201, the Declaratory Judgment Act; and 5 U.S.C. § 702, the Administrative Procedure Act ("APA"). On June 6, 2011, defendants filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

---

[2](...continued)
jurisdiction. The affidavit does not specify who performs the check against the Interagency Border Inspection System.

[3]The fingerprints used in the FBI fingerprint check must be less than 15 months old at the time of the interview. Thus, the fingerprints that plaintiff provided on January 25, 2010, have expired for the purposes of naturalization. Defendants' affidavits indicate that plaintiff will receive a new fingerprint notice prior to the date of his interview.

[4] Infopass is a free service allowing an applicant to schedule an appointment with a USCIS officer to discuss the status of their application over the internet.

## DISCUSSION

### I. Legal Standard

Rule 12(b)(1) motions to dismiss are premised as either facial or factual attacks on jurisdiction. Publications Int'l, Ltd. v. Leapfrog Enter., Inc., 08 C 2800, 2008 WL 5142286, at *2 (N.D. Ill. Dec. 4, 2008). Facial attacks challenge the sufficiency of the pleadings, as compared to factual challenges wherein "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003) (emphasis in original). "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, . . . the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). In either case, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. United Phosphorus, 322 F.3d at 946.

In the instant case, defendants dispute the factual basis underlying plaintiff's assertion of subject matter jurisdiction. The Seventh Circuit instructs that different methods of review apply to facial and factual challenges to a district court's subject matter jurisdiction. See id. When presented with a facial challenge, "the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009). In contrast, when presented with a factual challenge to jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Apex Digital, 572 F.3d at 443-44. In a factual Rule 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's allegations,

and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. "The Court may weigh the evidence in order to satisfy itself that jurisdiction exists; as such, disputes over material facts will not preclude the court from deciding jurisdictional issues." Bd. of Trs. of Pipe Fitters' Welfare Fund Local 597 v. Adams, 97 C 5592, 1998 WL 259543, at *2 (N.D. Ill. May 7, 1998).

## II. Defendants' Motion to Dismiss

Plaintiff's complaint alleges three statutory bases for this court's subject matter jurisdiction: 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 701 et seq.[5] In moving to dismiss for lack of subject matter jurisdiction, defendants argue that none of these statutes confer jurisdiction on this court to adjudicate plaintiff's claim.

### A. Jurisdiction Under the Mandamus Act

First, plaintiff alleges that the court has jurisdiction under 28 U.S.C. § 1361, which grants district courts "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Supreme Court has held that mandamus relief can be granted only to "compel the performance of a 'clear non-discretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (citing Heckler v. Ringer, 466 U.S. 602, 616 (1984)). Defendants argue that the court lacks jurisdiction because, prior to completing an interview of plaintiff, defendants have no clear non-discretionary duty to process plaintiff's naturalization application

[5]Plaintiff's complaint also refers to 28 U.S.C. § 1331, but because he describes § 1331 as "the mandamus statute," this appears to be a typographical error.

within a certain period of time. Plaintiff correctly responds, however, that whether the elements for relief under the Mandamus Act are satisfied is not a jurisdictional question.

"[U]nless the claim is so frivolous that it fails the Bell v. Hood test, the district court has jurisdiction under [28 U.S.C.] § 1361 to determine whether the prerequisites for mandamus relief have been satisfied." Ahmed v. DHS, 328 F.3d 383, 386-87 (7th Cir. 2003). If any of those prerequisites is missing, the court should "deny the petition, not [for lack of subject matter jurisdiction], but because the plaintiff has not demonstrated an entitlement to this form of relief." Id. at 387. Thus, the proper test for determining subject matter jurisdiction over a mandamus action is whether the claim is either clearly "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial or frivolous." Bell v. Hood, 327 U.S. 678, 682-83 (1946).

There is no indication, and defendants do not assert, that plaintiff's mandamus claim is either, (1) made solely for the purpose of obtaining jurisdiction, or (2) wholly insubstantial or frivolous. Notably, "only the most extreme cases will fail the jurisdictional test of substantiality." LaSalle Nat. Trust, N.A. v. ECM Motor Co., 76 F.3d 140, 143 (7th Cir. 1996). Plaintiff's claim that USCIS failed to fulfill their clear non-discretionary duty to adjudicate his naturalization application is not "so patently without merit" that it fails the jurisdictional mandamus test. Bell v. Hood, 327 U.S. 678, 683 (1946).

Thus, the court has subject matter jurisdiction to adjudicate plaintiff's mandamus claim. Whether plaintiff's claim satisfies the elements required for mandamus relief is irrelevant to whether this court has subject matter jurisdiction. Defendants' Fed. R. Civ. P. 12(b)(1) motion to dismiss plaintiff's mandamus claim is denied.

### B. Jurisdiction Under the Administrative Procedure Act ("APA")

Plaintiff also asserts that this court has jurisdiction under 5 U.S.C. § 706(1), which provides that district courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." Plaintiff argues that, when read together, 5 U.S.C. § 555(b) and 8 U.S.C. § 1446(d) create a clear non-discretionary duty for USCIS to adjudicate naturalization applications within a reasonable time, and that § 706(1) gives this court jurisdiction to compel USCIS to fulfill that duty. 5 U.S.C. § 555(b) requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Under 8 U.S.C. § 1446(d), USCIS "shall make a determination as to whether the application should be granted or denied, with reasons therefor." (Emphases added.)

Further, plaintiff points to two sources for a standard to determine the reasonableness of USCIS's delay: (1) 8 U.S.C. § 1571 ("It is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application . . . ."); and (2) current USCIS processing times for adjudication of naturalization applications.

Defendants argue that the court lacks subject matter jurisdiction to adjudicate plaintiff's claim under the APA for three reasons: (1) the APA does not apply to actions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and the process for determining naturalization applications is committed to agency discretion by law; (2) the APA does not apply where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," Heckler v. Chaney, 470 U.S. 821, 830 (1985), and

here the court would have no meaningful standard against which to judge what constitutes a reasonable amount of time for adjudicating naturalization applications; and (3) the matter is not ripe for judicial review until either a final decision has been made by USCIS or 120 days have passed after USCIS interviews the applicant.

District courts, in this circuit and elsewhere, are split on whether USCIS has a clear non-discretionary duty to adjudicate immigration applications.[6] But in the absence of binding authority, this court is persuaded by the reasoning of the many courts that have found that USCIS has a clear non-discretionary duty to adjudicate. 5 U.S.C. § 555(b) requires that adjudication of a naturalization application must be concluded "within a reasonable time." While Congress has not provided a specific time limit, "[t]he absence of a statutory time limit, without more, is insufficient to suggest that Congress intended to preclude judicial review of [an immigrant benefit application]." Kamal v. Gonzales, 547 F. Supp. 2d 869, 875 (N.D. Ill. 2008). Further, "the strong presumption is that jurisdiction exists under [28 U.S.C.] § 1331 unless Congress has made it clear that it has carved out an exception." Saleem v. Keisler, 520 F. Supp. 2d 1048, 1052 (W.D. Wis. 2007). Congress has carved out no such exception regarding the pre-interview adjudication of naturalization applications.

---

[6] Compare, e.g., Sharif v. Chertoff, 497 F. Supp. 2d 928, 933 (N.D. Ill. 2007) (and cases cited therein) (holding that USCIS does not have a clear non-discretionary duty to adjudicate immigration applications), with, e.g., He v. Chertoff et al., 528 F. Supp. 2d 879, 884 (N.D. Ill. 2008), Paunescu v. INS, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999), Khananisho v. Chertoff, 07 CV 7211, 2008 WL 5217296, at *3 (N.D. Ill. Dec. 10, 2008), and Khelashvili v. Dorochoff, 07 C 2826, 2007 WL 4293634, at *2 (N.D. Ill. Dec. 6, 2007) (and cases cited therein) (all holding that USCIS has a clear non-discretionary duty to adjudicate immigration applications).

Defendants argue that because 8 U.S.C. § 1447(b) provides a specific right to relief when USCIS has not rendered a final decision within 120 days of an applicant interview, Congress must have intended to commit the pace of pre-interview processing of naturalization applications to agency discretion. If this were true, USCIS could delay the adjudication of a naturalization application indefinitely by opting never to schedule an applicant interview. It stands to reason that Congress did not intend that absurd result. Bailey v. City of Lawrence, Ind., 972 F.2d 1447, 1452 (7th Cir. 1992) ("Courts are bound to construe a statute to avoid absurd results."). The specific time limitation for post-interview processing established by Congress does not preclude a right to relief for unreasonable delay of pre-interview processing.

Defendants argue that even if USCIS has a duty to complete the pre-interview processing of applications within a reasonable time, there is no meaningful standard for determining whether USCIS has fulfilled that duty. Where there is no meaningful standard, defendants assert, there is no law to apply and judicial review is precluded because the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The absence of a specific time limit, however, does not commit determination of processing pace to agency discretion. USCIS has a duty to adjudicate applications within a reasonable time, and courts are not left to determine reasonableness in a vacuum.

Rather, as plaintiff points out, a standard for reasonable processing time can be informed by, (1) the "sense of Congress" expressed in 8 U.S.C. § 1571 that applications should be processed within 180 days of filing, and (2) current USCIS processing times. Further, in determining the reasonableness of agency delay, courts have considered the following factors:

(1) Whether the time the agency takes to make a decision is governed by a rule of reason, the context for which may be supplied by an enabling statute that provides

a timetable or other indication of the speed with which Congress expects the agency to proceed;

(2) whether human health and welfare are at stake (delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake);

(3) the effect of expediting delayed action on agency activities of a higher or competing priority; and

(4) the nature and extent of the interests prejudiced by the delay.

Khananisho v. Chertoff, 07 CV 7211, 2008 WL 5217296, at *5 (N.D. Ill. Dec. 10, 2008) (citing Kousar v. Mueller et al., 549 F. Supp. 2d 1194, 1198 (N.D. Cal. 2008) (what constitutes a reasonable time for adjudicating immigration benefit applications depends on the facts of each case)). Further, "the court need not find any impropriety lurking behind agency lassitude in order to hold that that agency action is unreasonably delayed." Id.

The court has subject matter jurisdiction to determine whether USCIS has failed to fulfill its clear non-discretionary duty to process naturalization applications within a reasonable period of time. Defendants' motion to dismiss plaintiff's APA claims for lack of subject matter jurisdiction is denied.

**C. Jurisdiction Under the Declaratory Judgment Act ("DJA")**

The Declaratory Judgment Act provides the court discretion, in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

Defendants argue that because the court has no subject matter jurisdiction over the claims under the Mandamus Act and the APA, this case presents no active controversy and the court

cannot issue a declaratory judgment. Plaintiff responds that because jurisdiction is appropriate under both the Mandamus Act and the APA, there is a case in controversy and an issue ripe for review. As such, plaintiff asserts that jurisdiction under the Declaratory Judgment Act is proper.

Both arguments implicitly acknowledge that "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction," and requires an "independent basis for jurisdiction." GNB Battery Technologies v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995). Thus, the availability of declaratory relief in this case is contingent upon the court's finding that it has subject matter jurisdiction over plaintiff's Mandamus Act or APA claims.

Because the court has subject matter jurisdiction under both the Mandamus Act and the APA, this case presents an active controversy within the court's jurisdiction and is ripe for judicial review. As such, the court may issue a declaratory judgment in this matter. Defendants' motion to dismiss plaintiff's claim for declaratory relief for lack of subject matter jurisdiction is denied.

**D. Defendant Mueller**

In their motion to dismiss, defendants assert that the court lacks subject matter jurisdiction over plaintiff's claim against defendant Robert Mueller, the Director of the FBI, both because the FBI does not adjudicate applications for naturalization and because the FBI fulfilled any duty it had when it completed plaintiff's name check on February 2, 2010.[7] Plaintiff, in its response to defendants' motion to dismiss, stated that he did not object to withdrawing his claim

[7]Because USCIS has not requested that the FBI schedule another fingerprint examination of plaintiff, their duty to complete that examination has not yet arisen.

against defendant Mueller. Thus, with regard to defendant Mueller, all of plaintiff's claims are dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss for lack of subject matter jurisdiction is granted with respect to all claims against defendant Mueller and denied with respect to all claims against defendants Dorochoff, Napolitano, and Holder. Those defendants are directed to answer the complaint on or before October 20, 2011, and to appear at a status conference October 25, 2011, at 9:00 am. The status conference previously set for September 28, 2011, is cancelled.

**ENTER: September 22, 2011**

**Robert W. Gettleman**
**United States District Judge**